UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ESSAM KHALIL,<br>    Plaintiff, | : | CIVIL ACTION NO.<br>3:10-CV-0859 (JCH) |
| v. | : | |
| DAVID MOORE and BRIAN YERZAK<br>    Defendants. | : | NOVEMBER 28, 2011 |

**RULING RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 23)**

**I.    INTRODUCTION**

Plaintiff, Essam Khalil, brings this suit against Sergeant David Moore and Officer Brian Yerzak ("defendants") of the Shelton Police Department ("SPD"), claiming that Moore and Yerzak used unreasonable force against Mr. Khalil and performed a warrantless entry and search of his dwelling, in violation of the Fourth Amendment and 42 U.S.C. § 1983, while responding to a phone call to the police made by Mr. Khalil's estranged wife. In addition, Mr. Khalil alleges that the defendants subjected him to assault, battery, and trespass, in violation of Connecticut common law. Defendants have made a Motion for Summary Judgment, which Mr. Khalil opposes. For the reasons set forth below, the Motion is denied in part and granted in part.

**II.    FACTUAL BACKGROUND**

Mr. Khalil's wife, Susan Khalil, filed for divorce in January 2007, and moved away from the family home, located at 151 Meadow Street in Shelton, Connecticut, in August 2007. L.R. 56(a)(1) Stmt. ¶ 2; L.R. 56(a)(2) Stmt. ¶ 2. On May 25, 2008, while the Khalil's divorce was still pending, Susan Khalil arrived at 151 Meadow Street to pick up her daughter and to retrieve some paperwork regarding her daughter's Girl Scout troop.

1

L.R. 56(a)(1) Stmt. ¶ 4; L.R. 56(a)(2) Stmt. ¶ 4. Mrs. Khalil claims that when she attempted to enter the house, Mr. Khalil physically dragged her out of the garage, threw her onto the driveway, and told her she could not enter the house; however, Mr. Khalil denies that he had any physical contact with Mrs. Khalil on that day. See L.R. 56(a)(1) Stmt. ¶ 5; L.R. 56(a)(2) Stmt. ¶ 5.

Mrs. Khalil called the police from the driveway of 151 Meadow Street, and Officer Yerzak was dispatched to the house. L.R. 56(a)(1) Stmt. ¶¶ 6, 8; L.R. 56(a)(2) Stmt. ¶¶ 6, 8. Mrs. Khalil informed Yerzak that, although she retained ownership rights to the house, she had not attempted to enter the house because she was afraid of Mr. Khalil. L.R. 56(a)(1) Stmt. ¶ 10; L.R. 56(a)(2) Stmt. ¶ 10. Defendants claim that while Yerzak and Mrs. Khalil were speaking in the driveway, Mr. Khalil opened a second floor window and yelled at Mrs. Khalil to "move her car from 'his' driveway, to 'get the f*&k out of here' and 'you're not coming in my f&*king house.'" L.R. 56(a)(1) Stmt. ¶ 12. Mr. Khalil, however, claims that, in fact, he said that Mrs. Khalil was not allowed in the house, and that if anyone came into the house without a court order, he would "'take legal action against them.'" L.R. 56(a)(2) Stmt. ¶ 12. The parties also dispute how Yerzak responded to Mr. Khalil, with Mr. Khalil claiming that Yerzak told him to "'[s]hut [his] fuckin [sic] mouth and shut the window,'" and defendants claiming that Yerzak "advised the plaintiff to calm down" after Mr. Khalil swore at Yerzak. See L.R. 56(a)(1) Stmt. ¶ 14; L.R. 56(a)(2) Stmt. ¶ 14.

The parties dispute when Officer Judkins and Sergeant Moore arrived; however, it is clear that three individuals, Yerzak, Judkins, and Moore, reported to Mr. Khalil's house. L.R. 56(a)(1) Stmt. ¶¶ 15, 17; L.R. 56(a)(2) Stmt. ¶¶ 15, 17. Mrs. Khalil

2

informed Sergeant Moore that she retained ownership rights to the house and that no order prevented her from entering the house, which Moore confirmed with the SPD dispatcher. L.R. 56(a)(1) Stmt. ¶¶ 18–19; L.R. 56(a)(2) Stmt. ¶¶ 18–19. Defendants claim that, while Moore was speaking with Mrs. Khalil, Mr. Khalil opened the second floor window and "yelled that he wanted the officers off his property along with words to the effect of, 'if she comes in my house, I will break both of her legs.'" L.R. 56(a)(1) Stmt. ¶ 20. Mr. Khalil denies that he made this statement. L.R. 56(a)(2) Stmt. ¶ 20.

The parties dispute what occurred when the officers attempted to enter Mr. Khalil's house. Defendants claim that Mrs. Khalil gave them permission to enter the house, but that Mr. Khalil placed his hands on Moore's shoulders in an effort to stop Moore from entering. L.R. 56(a)(1) Stmt. ¶¶ 25–28. When Mr. Khalil continued to push on Moore's shoulder area, Moore and Judkins grabbed Mr. Khalil's arms, backed him up to an interior wall, and restrained him. See L.R. 56(a)(1) Stmt. ¶¶ 29–30. Mr. Khalil, however, maintains that the three officers grabbed him and pushed him against the wall as soon as he opened the door, and that he never tried to prevent the officers from entering the house. See L.R. 56(a)(2) Stmt. ¶¶ 28–30, 34. The parties agree that Mr. Khalil was not handcuffed. L.R. 56(a)(1) Stmt. ¶ 35; L.R. 56(a)(2) Stmt. ¶ 35.

Mrs. Khalil entered the house with Yerzak while Mr. Khalil was restrained against the wall; however, after Mr. Khalil calmed down, the officers instructed him to sit in a chair, which he did. See L.R. 56(a)(1) Stmt. ¶¶ 41–42; L.R. 56(a)(2) Stmt. ¶¶ 41–42. Later, Mr. Khalil was placed under arrest, transported to the Shelton Police Department, and charged with Breach of Peace in the Second Degree. L.R. 56(a)(1) Stmt. ¶¶ 48, 50; L.R. 56(a)(2) Stmt. ¶ 48, 50.

Following this incident, Mr. Khalil sought medical treatment at Griffin Hospital, where he was given ice patches and a painkiller prescription. L.R. 56(a)(1) Stmt. ¶ 53; L.R. 56(a)(2) Stmt. ¶ 53. Approximately one week later, Mr. Khalil visited his general physician and received another prescription. L.R. 56(a)(1) Stmt. ¶ 54; L.R. 56(a)(2) Stmt. ¶ 54. Other than these two instances, Mr. Khalil has not received any further medical treatment as a result of this incident. L.R. 56(a)(1) Stmt. ¶ 55; L.R. 56(a)(2) Stmt. ¶ 55.

## III.	STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Id. In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. See Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009). Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "A dispute about a 'genuine

4

issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir.2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also Havey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that a non-moving party must point to more than a mere "scintilla" of evidence in order to defeat a motion for summary judgment).

## IV.  DISCUSSION

### A.  42 U.S.C. § 1983

#### 1.  Excessive Force

In order demonstrate a violation of 42 U.S.C. § 1983, a plaintiff must show that: (1) the defendants acted under color of state law, and (2) the defendants' conduct deprived the plaintiff of a constitutional or federal statutory right. See, e.g., Gladwin v. Pozzi, 403 Fed. Appx. 603, 605 (2d Cir. 2010). It is well established that the Fourth Amendment protects an individual's right to be free from the use of excessive force. See Graham v. Connor, 490 U.S. 386, 396–97 (1989). In determining whether a particular use of force was excessive, courts consider the use of force from the perspective of a reasonable officer on the scene, paying particular attention to the facts and circumstances of the particular case, including the severity of the crime, whether the suspect poses an immediate threat to safety, and whether the suspect is attempting to resist arrest or flee. See id. at 396.

Defendants argue that Mr. Khalil cannot establish that he was denied a right, privilege, or immunity secured by the Constitution or federal law because he cannot

5

establish that the officers' actions were unreasonable in light of the circumstances. See Mem. Supp. Defs.' Mot. Summ. J. at 12–13. Defendants argue that, given that Mr. Khalil was "argumentative, uncooperative, and had threatened to break Mrs. Khalil's legs if she entered the house," and that he had "refused to move out of the way" and "placed his hands on Sergeant Moore's shoulders," the officers were justified in briefly restraining Mr. Khalil. See id. at 15–17.

As discussed above, however, Mr. Khalil disputes many of these claims. See L.R. 56(a)(2) Stmt. ¶¶ 5, 12, 14, 20, 25, 28–30. If a jury were to credit Mr. Khalil's version of the facts, finding that he did not have any physical contact with Mrs. Khalil prior to the officers' arrival, did not make any vulgar statements or threats of violence towards Mrs. Khalil or the officers, and did not attempt to block the officers' entry by placing his hands on Moore's shoulders, it would be reasonable for a jury to conclude that the officers' use of force was excessive under the circumstances.[1] Accordingly, summary judgment is inappropriate with regard to Mr. Khalil's claim regarding the use of excessive force.

### 2. Unlawful Entry and Search

Defendants further argue that Mr. Khalil's claims regarding unlawful entry and search fail because the officers had consent from Mr. Khalil's wife to enter the house. See Mem. Supp. Defs.' Mot. Summ. J. at 19. In response, Mr. Khalil argues that his

---

[1] Defendants further argue that Officer Yerzak had no physical contact with Mr. Khalil and, to the extent Khalil asserts that Yerzak is liable for failing to intervene on his behalf, Yerzak is entitled to summary judgment because the incident happened too quickly for Yerzak to intervene. See Mem. Supp. Defs.' Mot. Summ. J. at 17–19. As a material issue of fact exists with regard to whether Yerzak helped to restrain Khalil, however, summary judgment is not appropriate with regard to Khalil's claim against Yerzak. See L.R. 56(a)(2) Stmt. ¶ 34; Khalil Depo. at 52.

6

presence at the house and clear refusal to allow the officers to enter negated his wife's consent.  See Mem. Opp. Defs.' Mot. Summ. J. at 2.

Absent an exception, the Fourth Amendment prohibits the police from entering a person's house without a warrant.  See, e.g. Georgia v. Randolph, 547 U.S. 108, 109 (2006).  An entry and search is valid where an individual possessing authority gives voluntary consent.  See id.  Where one resident of a shared dwelling consents to a warrantless entry and search, and another resident, present at the scene, refuses to consent, however, a warrantless entry and search is unreasonable.  See id. at 120.  When police seek to enter a home to provide protection to one tenant, rather than to search for evidence, however, a co-tenant's refusal to consent does not render the entry unconstitutional.  See id. at 118.

Even taking the facts as Mr. Khalil asserts them, it is clear that the officers' entry into his house in order to provide reasonable protection for Mrs. Khalil was lawful.  Mr. Khalil admits that he had threatened legal action against anyone who entered the house without a court order, in spite of the fact that Mrs. Khalil remained an owner of the house.  See L.R. 56(a)(2) Stmt. ¶¶ 3, 12.  Under these circumstances, it was reasonable for the officers to enter Mr. Khalil's home for the limited purpose of ensuring Mrs. Khalil's safety while she gathered her belongings.  See Georgia, 547 U.S. at 118.  Consequently, Mr. Khalil fails to assert facts to support his claim that the officers' entry was unlawful, and summary judgment is appropriate with regard to that claim.[2]

---

[2] For the same reasons, summary judgment is appropriate with regard to Khalil's state claim of trespass.  See Roberts v. Rosenblatt, 146 Conn. 110, 112 (1959); Wroniak v. Ayala, 1995 WL 371186, at *3 (Conn. Super. June 13, 1995) ("[I]t has long been held that a police officer who makes such an entry onto private property, in the course of performing his official duties, is not a trespasser but a licensee.").

Defendants assert that they did not conduct a search of Mr. Khalil's house. See L.R. 56(a)(1) Stmt. ¶ 49; Ex. C at ¶ 44; Ex. D at ¶ 35. In response to this assertion, Mr. Khalil asserts that he "lacks the requisite knowledge to agree or disagree." L.R. 56(a)(2) Stmt. ¶ 49. As Mr. Khalil fails to raise a material issue of fact with regard to whether the defendants conducted a warrantless search of his house over his objection, summary judgment is warranted with regard to his claim of an unlawful search.

### B. Qualified Immunity

Finally, defendants argue that they are entitled to qualified immunity. See Mem. Supp. Defs.' Mot. Summ. J. at 23–24. Where material facts are in dispute with regard to a determination of whether a particular use of force was reasonable, summary judgment on qualified immunity grounds is not appropriate. See Kerman v. City of New York, 261 F.3d 229 (2d Cir. 2001).

## V. CONCLUSION

For the foregoing reasons, the court **grants** defendants' Motion for Summary Judgment (Doc. No. 23) with regard to Mr. Khalil's claims of unlawful entry and search and trespass, but **denies** the Motion with regard to the remaining claims, namely the use of excessive force, assault, and battery.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 28th day of November, 2011.

    /s/ Janet C. Hall
Janet C. Hall
United States District Judge